**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**Northern Division**

| | | |
|---|---|---|
| PSEG RENEWABLE TRANSMISSION LLC, | * | |
| | * | |
| 80 Park Plaza Newark, NJ 07101 | * | |
| Plaintiff, | * | |
| v. | * | Case No. _____ |
| ANDREA KABLE, | * | |
| 3324 Bixler Church Road Westminster, MD 21157 | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**COMPLAINT FOR INJUNCTIVE RELIEF TO PROHIBIT OBSTRUCTION OF ACTIONS AUTHORIZED BY COURT ORDERS PURSUANT TO MD. CODE ANN. REAL PROPERTY § 12-111**

Plaintiff PSEG Renewable Transmission LLC (the "Company," or "Plaintiff"), pursuant to Md. Code Ann., Real Property ("RP") § 12-111(e), seeks an order prohibiting Defendant Andrea Kable from obstructing the Company's efforts to enter onto certain properties to conduct utility surveys pursuant to this Court's orders in *PSEG Renewable Transmission LLC v. Arentz Family, LP*, Case No. 1:25-cv-01235-ABA ("*PSEG I*") and *PSEG Renewable Transmission LLC v. Alvi Properties, LLC*, Case No. 1:25-cv-02296-ABA ("*PSEG II*").

**Nature of the Action**

1.      On December 31, 2024, the Company filed an application for a Certificate of Public Convenience and Necessity ("CPCN") with the Maryland Public Service Commission (the "PSC")

to construct the Maryland Piedmont Reliability Project ("MPRP"), an approximately 67-mile 500 kilovolt ("kV") transmission line that will traverse portions of Baltimore, Carroll, and Frederick Counties. The PSC is the state agency with siting authority over the alignment and construction of transmission lines in Maryland. The Company's application is now pending as Case No. 9773 before the PSC.

2. The Power Plant Research Program ("PPRP"), a division of the Maryland Department of Natural Resources ("DNR"), is statutorily obligated to analyze environmental and socioeconomic impacts of proposed electric generation stations and high voltage transmission lines in CPCN proceedings. *See* Md. Code Ann., Nat. Res. ("NR") § 3-306. The PSC has required the Company to conduct various field surveys and obtain environmental information that PPRP has requested from properties within the MPRP's proposed right of way. (*See* **Exhibit 1**, Public Service Commission Procedural Schedule, at 6-7). Without this information, the Company's CPCN application cannot move forward. *See id*.

3. Many owners of the properties contained within the MPRP's proposed right of way have refused the Company access to conduct these surveys. In *PSEG I* and *PSEG II*, the Company filed suit against these property owners, seeking preliminary injunctions permitting the Company to access the property owners' properties to conduct these surveys in accordance with RP § 12-111.

4. This Court granted the Company's motions for preliminary injunctions and issued those injunctions on June 20, 2025 (amended July 11, 2025) and September 5, 2025, as described more fully below. Prelim. Inj., *PSEG I*, Case No. 25-cv-1235-ABA (June 20, 2025), Dkt. No. 256, *as amended*, Am. Prelim. Inj., *PSEG I*, Case No. 25-cv-1235-ABA (July 11, 2025), Dkt. No. 268; Prelim. Inj., *PSEG II*, Case No. 25-cv-2296-ABA (Sept. 5, 2025), Dkt. No. 160 (collectively, the "Orders"). The Orders authorize the Company to enter certain properties to conduct surveys and

obtain other information related to the MPRP to the extent authorized by RP § 12-111. *See* Am. Prelim. Inj., *PSEG I*, Case No. 25-cv-1235-ABA (July 11, 2025), Dkt. No. 268; Prelim. Inj., *PSEG II*, Case No. 25-cv-2296-ABA (Sept. 5, 2025), Dkt. No. 160.

5. Ms. Kable, acting with knowledge of the Orders, has repeatedly obstructed the Company in its efforts to complete the surveys authorized by RP § 12-111 and this Court. Among other actions, she has brandished a baseball bat to threaten surveyors, repeatedly interrupted surveying efforts, and has encouraged violence against the Company's agents on social media. As a result, the Company has been unable to safely enter certain properties in Carroll County to conduct the requisite surveys and inspections. The Company must also soon return to these properties, and others in the vicinity, to perform additional surveys. Ms. Kable's actions imperil the Company's ability to safely continue its survey work in Carroll County.

6. The Company therefore asks this Court to exercise its authority pursuant to RP § 12-111(e) and enter an order that prohibits Ms. Kable from continuing to obstruct this Court's Orders.

**Parties**

7. Plaintiff, PSEG Renewable Transmission LLC, is a transmission development company. It is a Delaware limited liability company with its principal place of business located at 80 Park Plaza, Newark, New Jersey 07102. The Company's sole member is PSEG Renewable Ventures LLC, also headquartered in New Jersey. The sole member of PSEG Renewable Ventures LLC is PSEG Energy Holdings L.L.C., also headquartered in New Jersey. The sole member of PSEG Energy Holdings L.L.C. is Public Service Enterprise Group, Inc. ("PSEG"), a diversified energy company headquartered in Newark, New Jersey that, through its subsidiary, Public Service

3

Electric and Gas Company, provides electric and gas services to millions of residential and commercial customers and owns and maintains 834 miles of transmission rights of ways.

8.  Defendant Andrea Elizabeth Kable is an individual who resides at 3324 Bixler Church Road, Westminster, Maryland 21157. Upon information and belief, Ms. Kable is also known by the names Andrea Dell and Andrea Kable-Dell.

## Jurisdiction and Venue

9.  This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy, excluding costs and interest, exceeds $75,000, and complete diversity of citizenship exists between the parties.

10. This Court has personal jurisdiction over Ms. Kable because she is an individual domiciled in Maryland.

11. Venue is proper within this district under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to this action occurred within this district.

## Factual Background

12. On April 15, 2025, the Company filed a petition for injunctive relief in *PSEG I* pursuant to RP § 12-111 against various owners of real property along the proposed right of way for the MPRP. Pet. for Inj. Relief to Obtain Temporary Access to Subject Properties for Performing Non-Invasive Field Surveys Pursuant to Md. Code Ann., Real Property § 12-111, *PSEG I*, Case No. 25-cv-1235-ABA (April 15, 2025), Dkt. No. 1.

13. The Company simultaneously sought a preliminary injunction allowing immediate access to the landowners' properties. Mot. for Prelim. Inj., *PSEG I*, Case No. 25-cv-1235-ABA (April 15, 2025), Dkt. No. 75.

14. On June 20, 2025, this Court granted the Company's motion and issued a preliminary injunction requiring that the Company be permitted to enter onto the properties "and to remain on the property to the extent reasonably necessary to make surveys, run lines or levels, or obtain information relating to the acquisition and future use of the properties in connection with the Maryland Piedmont Reliability Project." Prelim. Inj., *PSEG I*, Case No. 25-cv-1235-ABA (D. Md. June 20, 2025), Dkt. No. 256. The preliminary injunction required the Company to provide property owners not less than 24 hours' notice of entry, though notice could be given once for entry on multiple days. *Id.*

15. In its memorandum opinion accompanying the June 20, 2025 preliminary injunction, this Court determined that the Company had made the requisite showing that, absent the requested relief, the Company would suffer irreparable harm. *PSEG I*, 2025 WL 1725814, at *22 (D. Md., 2025). The Court further determined that such relief was in the public interest, as the advancement of projects like the MPRP "is generally in the public interest," and PPRP had determined that the studies the Company sought to conduct were necessary. *Id.* at *23.

16. The Court subsequently amended the June 20, 2025 preliminary injunction, further clarifying that the Company was permitted to access the landowners' properties to the extent authorized by RP § 12-111, among other clarifications. Am. Prelim. Inj., *PSEG I*, Case No. 25-cv-1235-ABA (July 11, 2025), Dkt. No. 268.

17. On July 15, 2025, the Company filed a second action in this Court for injunctive relief pursuant to RP § 12-111 against additional property owners. Pet. for Inj. Relief to Obtain Temporary Access to Subject Properties for Performing Non-Invasive Field Surveys Pursuant to Md. Code. Ann., Real Property § 12-111, *PSEG II*, Case No. 25-cv-2296-ABA (July 15, 2025), Dkt. No. 1. The Company simultaneously sought a preliminary injunction, again seeking

immediate access to these properties in order to perform the preliminary surveys required by PPRP. Mot. for Prelim. Inj., *PSEG II*, Case No. 25-cv-2296-ABA (July 15, 2025), Dkt. No. 124.

18. On September 2, 2025, this Court granted the Company's motion for a preliminary injunction "for the same reasons explained" in its memorandum opinion accompanying the June 20, 2025 preliminary injunction in *PSEG I*. Order, *PSEG II*, Case No. 25-cv-2296-ABA (Sept. 2, 2025), Dkt. No. 156. The Court subsequently issued a preliminary injunction requiring that the Company be permitted to enter onto the properties "and to remain on the property to the extent reasonably necessary to make surveys, run lines or levels, or obtain information relating to the acquisition and future use of the properties in connection with the Maryland Piedmont Reliability Project . . . as authorized by Md. Code Ann., Real Prop., § 12-111." Prelim. Inj., *PSEG II*, Case No. 25-cv-2296-ABA (Sept. 5, 2025), Dkt. No. 160. The preliminary injunction required the Company to provide Subject Property Owners not less than 24 hours' notice of entry, though notice could be given once for entry on multiple days. *Id.*

19. Ms. Kable is not a respondent in either *PSEG I* or *PSEG II*, as she does not own any land within the MPRP's proposed right-of-way. On information and belief, she is in a relationship with Matthew Lee Dell, who is a respondent in *PSEG I*, and resides on property owned by Mr. Dell to which the Court granted the Company access in *PSEG I*.

20. Ms. Kable is aware of the Orders. Ms. Kable told a local news station, WBALTV 11, that "[a] judge sitting behind a desk, that is not experiencing what it's like to have these people invade your property, I feel has no right to ask us to bear this." *See* **Exhibit 2**.[1]

---

[1] Tori Yorgey, *Board files brief to overturn lower court's ruling; Board doesn't want PSEG on private land*, WBALTV 11 (September 25, 2025), accessible at https://www.wbaltv.com/article/maryland-power-line-project-board-brief-no-private-land/68065326.

21. Notwithstanding her awareness of the Orders, Ms. Kable has multiple times sought to obstruct the Company's efforts to survey properties pursuant to the Orders.

22. On August 21, 2025, the Company's agent, William "Clay" Spradlin, traveled to a property owned by Mr. Dell to post a notice of entry on the front door of the residence located on the property, as required by this Court's amended preliminary injunction in *PSEG I*. (**Exhibit 3**, Declaration of Clay Spradlin ("Spradlin Decl."), at ¶ 3.)

23. Upon Mr. Spradlin's arrival at the property, Ms. Kable approached Mr. Spradlin's vehicle, shouted expletives at him, and demanded that he leave the property. (*Id.* at ¶ 4.)

24. Ms. Kable's hostile words to Mr. Spradlin included: "Move that fucking truck now," "Get the fuck off my property," and "Fucking leave now." (*Id.*)

25. Spradlin attempted to inform Ms. Kable that he was on the property to deliver a court-ordered notice regarding a pending survey; however, she continued to interrupt him. (*Id.* ¶ 5.)

26. Spradlin asked Ms. Kable if she was Mrs. Dell, and Ms. Kable confirmed that she was. (*Id.*) In order to avoid further escalation, Spradlin left the property. (*Id.* ¶ 6.) Spradlin was therefore unable to complete the Court-ordered notice of entry due to the woman's inference. (*Id.*). Because the Company has been unable to execute the Court-ordered notice of entry, it has not been able to proceed with any surveys on Mr. Dell's property.

27. On September 9, 2025, the Company's agents were parked on the side of Back Woods Road in Westminster, Maryland, a public roadway, when Ms. Kable approached the agents in a white pickup truck at a high rate of speed. (**Exhibit 4**, Declaration of Michael Powers ("Powers Decl."), at ¶¶ 5-6.)

28. Ms. Kable stopped her truck approximately 50 feet away from the Company's agents' vehicles, and then backed up her truck towards the agents, exited the vehicle, and approached the agents on foot. (*Id*. ¶¶ 6, 8, 10.) Ms. Kable began yelling aggressively and stated that she was livestreaming the interaction on social media. (*Id*. ¶ 10; **Exhibit 5**, Declaration of Matthew Ellsworth ("Ellsworth Decl.") at ¶ 4); (**Exhibit 6**, Declaration of Miles Fink ("Fink Decl."), at ¶¶ 5-6.)

29. Ms. Kable accused the Company's agents of trespassing. (Powers Decl. ¶ 11.) Michael Powers, Construction Manager and Safety Manager for the MPRP, responded that their position in the roadway was lawful because it was a public roadway. (*Id*.) Nonetheless, due to Ms. Kable's escalating behavior, Mr. Powers instructed the Company agents present to enter his vehicle and then drove away. (*Id*. ¶ 12.)

30. Despite Mr. Powers's efforts to de-escalate the situation and leave the scene, Ms. Kable got back into her vehicle and began tailing Mr. Powers's vehicle. (*Id*. ¶ 13.) She followed Mr. Powers's vehicle for approximately three quarters of a mile before turning off into a driveway. (*Id*. ¶ 14.) She then backed out of the driveway aggressively, nearly striking a motorcyclist. (*Id*. ¶ 15).

31. Following this interaction, Mr. Powers contacted the Carroll County Sheriff's Office and provided a statement to the sheriff. (*Id*. ¶ 16.) The sheriff confirmed that the white pickup truck was registered to Ms. Kable. (*Id*.)

32. Ms. Kable continued to harass other Company agents and employees, however. That same day, on September 9, 2025, after interacting with Mr. Powers, Ms. Kable pulled into the driveway of the property where Company agents were working, blocking their exit. (**Ex. 6**,

Fink Decl., at ¶ 7.) These agents were preparing to depart the property, having been instructed cease their operations due to Ms. Kable's earlier actions on nearby Back Woods Road. (*Id.* ¶¶ 6-7.)

33. A Company agent approached Ms. Kable's vehicle and attempted to tell her that the team needed to be able to leave the property safely and she was blocking their exit. (*Id.* ¶ 8.) Ms. Kable briefly argued with this request, then began to back out of the driveway. (*Id.*) She struck a tree stump as she did so and then drove away from the scene. (*Id.* ¶¶ 8-9.)

34. As crews drove away from the property, they saw Ms. Kable had parked her truck in a different driveway to the side of the road. (*Id.* ¶ 10.) Ms. Kable stood next to her truck, swinging a baseball bat and shouting aggressively. (*Id.*)

35. As a result of Ms. Kable's behavior on September 9, 2023, survey crews were required to return to the property several days later to complete the work, delaying its completion. (*Id.* ¶ 11).

36. On September 23, 2025, Ms. Kable again obstructed the Company's work. The Company's agents traveled to a property on Old Bachmans Valley Road in Westminster, Maryland, owned by David and Rachel King, Respondents in *PSEG II*, to conduct surveys. (**Exhibit 8**, Declaration of Andrew Rachid ("Rachid Decl.") at ¶ 4; **Exhibit 9**, Declaration of Marco Garza ("Garza Decl.") at ¶ 4.) Company agents parked their vehicles on the side of Old Bachmans Valley Road, which they understood to be a public road, as to not block traffic. (**Ex. 8**, Rachid Decl., at ¶ 5.; **Ex. 9**, Garza Decl. at ¶ 4.)

37. Ms. Kable arrived in her truck, slowed down, and began to photograph crews. (**Ex. 8**, Rachid Decl., at ¶ 6.) Ms. Kable parked her truck in the middle of the road, exited the vehicle, and walked toward the agents holding her phone up as though filming. (*Id.* at ¶ 7.) Ms. Kable

accused crews of trespassing and harassing Amish residents and attempted to film the license plates of crew vehicles. (*Id.* at ¶ 8; *see also* **Ex. 9**, Garza Decl., at ¶ 4).

38. A crew member called the police. (**Ex. 8**, Rachid Decl., at ¶ 9.) A sheriff arrived, and Ms. Kable departed, but then returned with Mr. King in her vehicle. (*Id.*; *see also* **Ex. 9**, Garza Decl., at ¶ 5). Mr. King informed the sheriff that he did not give the Company consent to be on the property, which required crews to cease operations at the property. (**Ex. 8**, Rachid Decl., at ¶ 9.)

39. Ms. Kable further intervened when crews returned to the property on September 24, 2025, to complete the work begun there. (**Ex. 9**, Garza Decl. at ¶ 6; **Ex. 5**, Ellsworth Decl., at ¶ 6.) Mr. King advised the Company's agents that he did not want the Company's surveyors to perform any more work because he had heard that the Company was suing someone else related to an issue with a dog. (**Ex. 9**, Garza Decl., at ¶ 6.)

40. The Company's agents advised Mr. of a court order permitting them to conduct the survey, but Mr. King nonetheless stated he would call law enforcement, and he then left the area. (*Id.*) Thereafter, while awaiting law enforcement, Company agents shot GPS points of a building on the Property, which took roughly 15 minutes. (*Id.* ¶ 7.)

41. Ms. Kable then arrived at the property in a white pickup truck and stopped in front of the Company's agents. (*Id.*; **Ex. 5**, Ellsworth Decl., at ¶¶ 7-8.) She rolled the windows of the vehicle down to reveal a large dog in the backseat. (**Ex. 5**, Ellsworth Decl., at ¶ 8; **Ex. 9**, Garza Decl. at ¶ 9.) Ms. Kable then called the sheriff and accused the Company of trespassing, endangerment, and harassment. (**Ex. 5**, Ellsworth Decl., at ¶ 9.) Ms. Kable then began to harass members of the crew, most of whom then left the Property. (*Id.* at ¶ 10; **Ex. 9**, Garza Decl. at ¶¶ 7-8.)

42. Company security agent Matthew Ellsworth remained to speak with Ms. Kable in an effort to deescalate the situation, and Company security agent Matthew Garza remained nearby for Mr. Ellsworth's safety. (**Ex. 5**, Ellsworth Decl., at ¶ 10; **Ex. 9**, Garza Decl., at ¶ 9.) Ms. Kable then leveled various insults and accusations at Mr. Garza, prompting Mr. Ellsworth to instruct Mr. Garza to depart with the other crew members. (**Ex. 9**, Garza Decl., at ¶¶ 10-12; **Ex. 5**, Ellsworth Decl., at ¶ 10.) As Mr. Garza walked away, Ms. Kable continued to yell at him, telling him she had once taken a pitchfork to her husband's throat and that Mr. Garza should ask her husband how that felt. (**Ex. 9**, Garza Decl., at ¶ 12.)

43. Mr. Ellsworth remained to attempt to calm Ms. Kable down. (**Ex. 5**, Ellsworth Decl., at ¶¶ 10-11.) During that conversation, Ms. Kable said to Mr. Ellsworth that "we got people looking for where you guys are," that she puts crew members' information on the internet, that she would have a gun on her if crews came to her property, and that she was good at "crowd control," among other statements. (*See* **Ex. 5**, Ellsworth Decl., at ¶ 11; Exhibit C to Ellsworth Decl.).

44. Notably, on September 16, 2025, Ms. Kable was arrested and charged for engaging in similar behavior towards Carroll County government employees that she allegedly believed were employees of the Company.

45. According to the Statement of Charges filed against Ms. Kable, Carroll County employees were engaged in survey work on a property owned by Arentz Family, LP, a respondent in *PSEG I*. Ms. Kable allegedly "approached them in a disorderly manor [sic]" and "proceeded to scream and yell at [them] while holding a bat which she threatened to assault them with." **Exhibit 7**, Statement of Charges, at 5. Ms. Kable also allegedly drove past one of the government employees, "nearly striking her." (*Id.*) The Carroll County employees also allegedly discovered that their vehicle "had been covered in mud with the letters 'FUCKU' written in the mud." (*Id.*)

11

When arrested, Ms. Kable admitted to covering the vehicle in mud but denied threatening the employees with a bat, "advis[ing] that she believed the victims were Power Line employees who did not have permission to be on the property." (*Id.*)

46. The seriousness of Ms. Kable's behavior is compounded by her activities on social media. Upon information and belief, Ms. Kable maintains a TikTok account under the name "ahorsegrl" with a handle or username of "@ahorsegrl1971." (*See* **Exhibit 10**, Declaration of Robyn Lessans ("Lessans Decl."), at ¶ 4; **Ex. A** to Lessans Decl.; **Ex. 4**, Powers Decl., at ¶ 19.)

47. On September 24, 2025, Ms. Kable posted a video to TikTok depicting Mr. Powers, and commented on that video stating, "[T]his corporation is taking severe advantage of the simple nature of these u technical [sic] people. FIGHT MPRP ANY WAY YOU CAN THE SHERIFF IS NOT PROTECTING US." (**Ex. 10**, Lessans Decl., at ¶¶ 5-6.)

48. Upon information and belief, Ms. Kable has encouraged violence in the comments to this TikTok post. In response to a comment on the same video from another user that stated, "Dump the magazine…," Ms. Kable responded, "into all the pretty orange targets [smiley face emoji]." (*Id.* ¶ 7.) Upon information and belief, "orange targets" is a reference to the orange vests worn by the Company's agents. (*Id.*)

49. In another response to an anonymous user's comment on the same video suggesting to "hunt" surveyors, Ms. Kable replied, "happy hunting! Stay safe! [red 100 emoji]." (*Id.* ¶ 8). She further suggested using animals to charge at surveyors. (*Id.* ¶ 10).

50. Ms. Kable also commented indicating her intention to continue to obstruct MPRP surveyors. (*Id.* ¶ 9.)

51. Ms. Kable's hostile actions towards the Company and its agents, as well as her conduct on social media, create real safety and security threats for Company agents and members

12

of the public in the surrounding area. (*See* **Ex. 4**, Powers Decl., at ¶¶ 4, 20-21; **Ex. 5**, Ellsworth Decl., at ¶ 13; **Ex. 6**, Fink Decl., at ¶¶ 6-7, 11; **Ex. 8**, Rachid Decl., at ¶ 10; **Ex. 9**, Garza Decl., at ¶ 14; *see also* **Ex. 7**.)

52. Ms. Kable's threatening behavior and obstruction tactics have thus interfered with and continue to interfere with the Company's ability to safely and timely survey properties pursuant to the Orders. (*See* **Ex. 3**, Spradlin Decl., at ¶ 6; **Ex. 4**, Powers Decl., at ¶¶ 17, 20-21; **Ex. 5**, Ellsworth Decl., at ¶¶ 13, 14; **Ex. 6,** Fink Decl., at ¶¶ 6-7, 11; **Ex. 8**, Rachid Decl., at ¶¶ 9-10; **Ex. 9**, Garza Decl., at ¶ 13.)

## **CLAIM FOR RELIEF**

### **Count I: Civil Contempt (RP § 12-111(e))**

53. The Company incorporates by reference each allegation contained in the preceding paragraphs as if set forth fully herein.

54. RP § 12-111(e) provides that "[a]ny person who has knowledge of an order issued pursuant to subsection (b) and who obstructs any civil engineer, surveyor, real estate appraiser, or any of their assistants acting under the authority of the order may be punished as for contempt of court."

55. This Court has issued two Orders pursuant to RP § 12-111(b) authorizing the Company to enter the Subject Properties to obtain information and conduct surveys.

56. The Company was acting under the authority of these Orders when it attempted to enter the properties identified above.

57. Upon information and belief, Ms. Kable had knowledge of the Orders.

58. Despite her knowledge of this Court's Orders, Ms. Kable has obstructed the Company's surveyors and/or assistants and hindered their efforts to obtain information and conduct surveys on the Subject Properties, as authorized by the Orders.

59. Ms. Kable has also made comments on social media encouraging violence against the Company's agents, further imperiling the Company's efforts to survey properties pursuant to the Orders.

## PRAYER FOR RELIEF

WHEREFORE, PSEG Renewable Transmission respectfully requests that the Court:

A. Enter an order pursuant to RP § 12-111(e) that:

   a. Respondent has violated RP § 12-111(e) by interfering with this Court's orders, which were entered pursuant to section (b) of that statute on June 20, 2025, as amended on July 11, 2025, in *PSEG Renewable Transmission LLC v. Arentz Family, LP*, Case No. 25-cv-1235-ABA, and on September 5, 2025 in *PSEG Renewable Transmission LLC v. Alvi Properties, LLC*, Case No. 25-cv-2296-ABA;

   b. Respondent is thus held in civil contempt of court;

   c. Respondent is enjoined from further obstructing the Company's actions taken under the authority of these orders; and

   d. Respondent shall pay Petitioner's reasonable attorneys' fees; and

B. Order such other and further relief as this Court deems just, proper, and equitable.

Date: October 24, 2025                              Respectfully submitted,

                                                    */s/ Kurt J. Fischer*

Kurt J. Fischer (Bar No. 03300)
Venable LLP
210 W. Pennsylvania Avenue
Suite 500
Towson, MD 21204
(410) 494-6200
kjfischer@venable.com

J. Joseph Curran III (Bar No. 22710)
Christopher S. Gunderson (Bar No. 27323)
Kenneth L. Thompson (Bar No. 03630)
Susan R. Schipper (Bar No. 19640)
Emily J. Wilson (Bar No. 20780)
Venable LLP
750 E. Pratt Street
Suite 900
Baltimore, MD 21202
(410) 244-7400
klthompson@venable.com
csgunderson@venable.com
srschipper@venable.com
ejwilson@venable.com

*Attorneys for Plaintiff PSEG Renewable Transmission LLC*

**CERTIFICATE OF SERVICE**

    I hereby certify on this 24th day of October, 2025, I electronically filed the foregoing with the Court by using the CM/ECF system. There is currently no counsel of record for Respondent. I certify that I will serve the foregoing on Respondent.

                                                 */s/ Emily J. Wilson*
                                                 Emily J. Wilson