**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**Northern Division**

| | | |
|---|---|---|
| PSEG RENEWABLE TRANSMISSION LLC, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | | Case No. 1:25-cv-3501-ABA |
| | * | |
| ANDREA ELIZABETH KABLE, | * | |
| | | |
| Respondent. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PETITIONER PSEG RENEWABLE TRANSMISSION LLC'S MOTION TO HOLD
RESPONDENT ANDREA ELIZABETH KABLE IN CONTEMPT OF COURT**

Petitioner PSEG Renewable Transmission LLC ("Petitioner" or the "Company") respectfully moves this Court to hold Respondent Andrea Elizabeth Kable in civil contempt of court for failure to comply with this Court's Preliminary Injunction (ECF 20) and Order Granting in Part and Reserving in Part Petitioner's Motion for Default Judgment (the "Default Judgment Order") (ECF 21).

The Preliminary Injunction directs that the Company be permitted and allowed to remain on properties to conduct surveys. (ECF 20.)   The Default Judgment Order enjoins Ms. Kable from obstructing the Company's survey efforts or engaging in threatening behavior directed towards the Company's agents. (ECF 21).  Nevertheless, on March 25, 2026, Ms. Kable screamed profanities and threatened to release her dogs on the Company's agents while they attempted to serve her property with a notice of an upcoming survey. (**Exhibit 1**, Declaration of Ryan Kivitz ("Kivitz Decl."), ¶ 8; **Exhibit 2**, Declaration of Mark Oswald ("Oswald Decl."), ¶ 8.)

1

The Company cannot safely return to Ms. Kable's property (or any property otherwise affiliated with Ms. Kable), given her continuing threatening conduct in flagrant disregard of this Court's orders. Without the ability to enter the property and timely perform the surveys authorized by the Preliminary Injunction, the Company runs the risk of experiencing the harm that the Preliminary Injunction in this case was fashioned to prevent.

Given this violation of the Court's Preliminary Injunction and Default Judgment Order, Ms. Kable's hostile conduct toward the Company's agents, and the continuing harm to the Company as a result, this Court should exercise its "inherent power to enforce compliance with [its] lawful order[] through civil contempt." *FTC v. Pukke*, 53 F.4th 80, 102 (4th Cir. 2022) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)); *see also Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 618 (4th Cir. 2018) ("[A] single violation of [an order] is sufficient to support a finding of contempt.").

## BACKGROUND

The Company filed the instant action after Ms. Kable repeatedly threatened the Company's agents and interfered with their ability to safely conduct surveys on multiple properties. (*See generally* ECF 1.) On March 25, 2026, the Company's land agents, accompanied by security personnel, traveled to 3324 Bixler Church Road, Westminster, Maryland 21157 ("the Property") to serve Matthew Dell, a Respondent in *PSEG 1*,[1] with notice of an upcoming survey on his property. (Ex. 1 ¶ 4; Ex. 2 ¶ 4.) Ms. Kable also resides at the Property and, upon information and belief, is married to Mr. Dell. (Ex. 1 ¶ 5; Ex. 2 ¶ 5.)

Due to the many safety issues that Ms. Kable has caused to date, the land agents traveled to the Property with an enhanced security presence. (Ex. 1 ¶ 6; Ex. 2 ¶ 6.) The security

---

[1] *PSEG Renewable Transmission LLC v. Arentz Family, LP, et al.*, Case No. 1:25-cv-01235.

2

agents wore body cameras, which they turned on when they arrived at the Property to record any interactions that occurred at the Property. (Ex. 1 ¶ 7; Ex. 2 ¶ 7; *see also* Ex. A to Exs. 1 and 2 (video of incident).) While the team was on the property, Ms. Kable aggressively and repeatedly screamed, "Get the fuck off my property!" and threatened to release the dogs on them.  (Ex. 1 ¶ 8; Ex. 2 ¶ 8; *see also* Ex. A to Exs. 1 and 2.) Given Ms. Kable's aggressive conduct and threats, the team retreated. (Ex. 2 ¶ 9.)  Approximately two hours later, the team drove past the driveway leading to the Property, where they observed physical barricades located in the driveway that had not been there approximately two hours prior. (Ex. 2 ¶ 10.)

## ARGUMENT

A finding of civil contempt requires the movant to show four elements: (1) "the existence of a valid decree of which alleged contemnor had actual or constructive knowledge;" (2) "a showing that the decree was in the movant's 'favor;'" (3) "a showing that the alleged contemnor, by its conduct, violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violation;" and (4) "a showing that the movant suffered harm as a result." *Columbia Gas Transmission Corp. v. Mangione Enters.*, 964 F. Supp. 199, 202 (D. Md. 1996); *see also Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020).  The movant must show these elements by clear and convincing evidence, and willfulness is not a necessary element.  *Columbia Gas*, 964 F. Supp. at 202–03.  Once this showing is made, "the burden shifts to the defendant to show good faith in making all reasonable efforts to comply with the enforcement order." *Klopp*, 957 F.3d at 461–62 (citation omitted).  Here, all four factors are met, and sanctions are appropriate.

### A. Ms. Kable Has Constructive Knowledge of the Preliminary Injunction and this Court's Default Judgment Order

The Preliminary Injunction and the Default Judgment Orders are valid decrees issued by this Court, and Ms. Kable had constructive knowledge of them. *See, e.g.*, *Enovative Techs.*, *LLC v. Leor*, 86 F. Supp. 3d 445, 446 (D. Md. 2015) (finding defendant in civil contempt for violating preliminary injunction); *Cascade Cap., LLC v. DRS Processing LLC*, No. 317CV00470RJCDSC, 2018 WL 4705559, at *3 (W.D.N.C. Oct. 1, 2018) (finding defendant in civil contempt for violating valid default judgment order); *Commonwealth Const. Co. v. Redding*, No. 1:14-CV-3568-GLR, 2015 WL 877406, at *2 (D. Md. Feb. 27, 2015) (noting that the Clerk's Office sent orders to the defendant's address and finding that the defendant therefore "had constructive, if not actual knowledge, of all filings").

### B. The Preliminary Injunction and the Default Judgment Order Are in The Company's Favor.

There can be no dispute that the Preliminary Injunction and the Default Judgment Order, requested by and granted to the Company, are in the Company's favor. The Court granted the Company access to properties, including Matthew Dell's, to conduct limited surveys upon finding that the Company was likely to suffer irreparable harm in the absence of such access. (*See* ECF 22 (enjoining Ms. Kable from obstructing Petitioner's efforts to conduct surveys authorized by this Court's Preliminary Injunction); ECF 19 (granting the Company's motion for preliminary injunction "for the reasons already explained in depth in the Court's June 20, 2025 memorandum opinion in PSEG 1")); *PSEG Renewable Transmission LLC v. Arentz Family, LP*, 788 F. Supp. 3d 705, 739 (D. Md. 2025). The Court agreed with the Company that "it likely will suffer substantial monetary harm from anticipated future financial losses (such as loss of revenue) as a result of the

4

delay" in the absence of a preliminary injunction. *PSEG Renewable Transmission LLC*, 899 F. Supp. 3d at 739. This requirement is easily met.

### C. Ms. Kable Has Actual or Constructive Knowledge of Her Violation of the Preliminary Injunction and the Default Judgment Order.

The Court's orders imposing access and non-obstruction obligations on Ms. Kable were "clear and unequivocal." *In re GMC*, 61 F.3d 256, 259 (4th Cir. 1995). The Preliminary Injunction expressly provides that, during the pendency of PSEG's CPCN proceeding, PSEG "shall be permitted to enter onto the properties of Respondent and to remain on the property" to the extent reasonably necessary to conduct the surveys authorized by Md. Code Ann., Real Property ("RP") § 12-111, subject to the Company's compliance with the Order's notice requirements. The Default Judgment Order then reaffirms and clarifies Ms. Kable's obligations by expressly enjoining Ms. Kable from "obstructing" PSEG's efforts to conduct the Court-authorized surveys, and defining "obstructing" to include, among other things: (i) engaging in violent or threatening behavior toward Company agents and (ii) forbidding or purporting to forbid entry onto properties where PSEG is lawfully permitted to conduct surveys. (ECF 22.) Accordingly, while the Company was providing the requisite survey notice under the Preliminary Injunction, Ms. Kable was required to permit the Company's agents to enter and remain on the property to do so. She was also barred from threatening Company agents or forbidding entry under the Default Judgment Order.

A district court may adjudge civil contempt where a party fails to be "reasonably diligent and energetic in attempting to accomplish what was ordered." *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network*, 2013 WL 2444132, at *3 (D. Md. June 4, 2013) (quoting *Happy Sumo Sushi, Inc. v. Yapona, Inc.*, 2008 WL 4526103 at *1 (D. Utah Oct. 3, 2008)), *report and recommendation adopted*, 2013 WL 3967934 (D. Md. July 31, 2013). *See also SEC v. SBM Inv. Certificates, Inc.*, 2012 U.S. Dist. LEXIS 28175, at *28-29 (D. Md. Mar. 2, 2012) (noting

5

constructive knowledge of violation of order will suffice, and given plain language of order, "a person exercising 'reasonable care and diligence'" would have been aware that actions violated order (citation omitted)). Here, in light of the express requirement that PSEG "shall be permitted" to enter and remain for surveys (subject to notice) and the express injunction against "obstructing" that includes threats and forbidding entry, Ms. Kable had actual or, at a minimum, constructive notice that threatening Company agents and refusing entry at the noticed time violates the Court's orders.

### D.  The Company Continues to be Harmed by Ms. Kable's Refusal to Permit Entry.

As explained above, this Court found that the Company is likely to suffer irreparable harm if it is not granted access to the property at issue (and others) to conduct limited surveys. (ECF 19 (granting the Company's motion for preliminary injunction "for the reasons explained in the Court's June 20, 2025 memorandum opinion in PSEG 1")); *PSEG Renewable Transmission LLC*, 788 F. Supp. 3d at 739. As to this instance specifically, Ms. Kable's actions are blocking the Company from safely completing any survey on the Property—exactly the harm the Preliminary Injunction was designed to avoid.

### E.  Sanctions are warranted to compensate the Company for losses sustained due to Ms. Kable's violation of the Preliminary Injunction and the Default Judgment Order.

Remedies for civil contempt are intended to "be remedial and compensatory," and this Court has "broad discretion" to determine the appropriate remedy. *In re GMC*, 61 F.3d at 259; *see also Klopp*, 957 F.3d at 461 ("Civil contempt orders—and the appropriate consequences for violating them—fall to the district court's discretion."). Remedies may include "ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees." *Id.* In addition to being compensatory, sanctions may also be "incentivizing." *Klopp*, 957 F.3d at 466. Damages in a contempt finding "must only meet the preponderance of the evidence

standard." *Talaria Co., LLC v. Duplessie*, 2025 WL 1545350, at *2 (D. Md. Apr. 25, 2025) (quoting *Schwartz v. Rent-A-Wreck of Am.*, 261 F. Supp. 3d 607, 617 (D. Md. 2017). No sanction can make up for the Company's lost time here, but reasonable attorney's fees are appropriate.

"The Court determines the reasonableness of attorneys' fees using 'the principles of the traditional lodestar method as a guide.'" *Hernandez v. Villa Bldg. Grp., LLC*, 2024 WL 3161574, at *3 (D. Md. June 25, 2024). Under this method, the "amount is determined by multiplying the number of hours reasonably expended by a reasonable hourly rate." *Id.* The hourly rate "is reasonable if it 'is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* (quoting *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 412 (D. Md. 2014). Appendix B to the Local Rules for the District Court of Maryland provides rules and guidelines for determining attorney's fees in certain cases "although . . . higher rates can be reasonable." *Id.* Factors to be considered in determining the reasonableness of attorneys' fees include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* (quoting *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).

Here, due to Ms. Kable's conduct, the Company has been forced to expend attorney's fees in connection with preparing and filing the instant Motion. The Company requests this Court to find Ms. Kable in contempt and order the Company to produce proof of its reasonable attorney's fees incurred in support of this motion. Further, the Company requests this Court to impose a civil fine in an amount this Court deems appropriate to compel compliance with its order.

**CONCLUSION**

For the foregoing reasons, the Company respectfully requests that the Court hold Ms. Kable in civil contempt and enter an order that requires Ms. Kable to comply with the Preliminary Injunction (ECF 20) and the Default Judgment Order (ECF 22), requires Ms. Kable to pay the Company's reasonable attorney's fees, and imposes civil fines and other remedies that this Court deems just and equitable.  A proposed order is attached herewith.

Date: March 26, 2026

Respectfully submitted,

*/s/ Kurt J. Fischer*
Kurt J. Fischer (Bar No. 03300)
Venable LLP
210 W. Pennsylvania Avenue
Suite 500
Towson, MD 21204
(410) 494-6200
kjfischer@venable.com

J. Joseph Curran III (Bar No. 22710)
Christopher S. Gunderson (Bar No. 27323)
Kenneth L. Thompson (Bar No. 03630)
Susan R. Schipper (Bar No. 19640)
Emily J. Wilson (Bar No. 20780)
Venable LLP
750 E. Pratt Street
Suite 900
Baltimore, MD 21202
(410) 244-7400
jcurran@venable.com
csgunderson@venable.com
klthompson@venable.com
srschipper@venable.com
ejwilson@venable.com

*Attorneys for Petitioner PSEG*
*Renewable Transmission LLC*

8

**CERTIFICATE OF SERVICE**

I hereby certify on this 26th day of March, 2026, I electronically filed the foregoing with the Court by using the CM/ECF system.  There is currently no counsel of record for Respondent. I certify that I will serve the foregoing on Respondent at the following address:

Andrea Kable
3324 Bixler Church Road
Westminster, MD 21157

/s/ *Emily J. Wilson*
Emily J. Wilson

9