# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**Northern Division**

PSEG RENEWABLE
TRANSMISSION LLC,

  Petitioner,

   v.

ANDREA ELIZABETH KABLE,

  Respondent.

   Case No. 1:25-cv-3501

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **DECLARATION OF RYAN KIVITZ**

I, Ryan Kivitz, pursuant to 28 U.S.C. § 1746, hereby swear as follows under penalty of perjury:

1. I am over 18 years of age and fully competent to give this Declaration.

2. I have been employed by Personal Protection Solutions, LLC as a security agent for three years.  Prior to joining Personal Protection Solutions, LLC, I served over eight years in the U.S. Army, including two tours in Iraq.  I also served over four years as a police officer in Prince Georges' County, Maryland.

3. I currently serve as the lead safety agent supporting PSEG Renewable Transmission LLC's (the "Company") efforts to survey private properties in order to gather information and data related to the Maryland Piedmont Reliability Project ("MPRP").  I coordinate the staffing and strategy for all safety protocols related to these survey efforts.

4. On March 31, 2026, I traveled to the property owned by Ruth Smith, a respondent in *PSEG Renewable Transmission LLC v. Belfast Farms, LLC, et al.*, Case No.

1

1:25-cv-03352, to provide safety support.  Our crew was accompanied by several U.S. Marshals pursuant to a court order.

5.      While we were on the Smith/McGrew property, I was made aware that the court entered an order granting the Company's motion for U.S. Marshals assistance on properties affiliated with Andrea Kable.

6.      My team and I discussed the Court's order while on site at the Smith/McGrew property and agreed to immediately travel to 3324 Bixler Church Road, Westminster, Maryland 21157, where Ms. Kable lives, since we already had the requisite survey personnel and U.S. Marshal team in place.  We had previously provided notice of upcoming surveys to Ms. Kable on March 25, 2026 in accordance with the Amended Preliminary Injunction entered in *PSEG Renewable Transmission LLC v. Arentz Family, LP, et al.*, Case No. 1:25-cv-01235.

7.      After completing surveys at the Smith/McGrew property, I traveled by car with other members of my team to a gas station.  The U.S. Marshals team met us at this location.

8.      While we were at this location, Sheriff James T. DeWeese and other members of the Carroll County Sheriff's Office arrived unannounced to the location in unmarked cars and approached us.

9.      I learned that the U.S. Marshals had provided notice to the Sheriffs' Office that the U.S. Marshals would be doing work in Carroll County on that day to assist with survey work.

10.      We informed Sheriff DeWeese that we would next be traveling to Ms. Kable's property.  Sheriff DeWeese advised that the U.S. Marshals should call him if they encountered issues on Ms. Kable's property, "before it turns into a shootout."

2

11.    After speaking with Sheriff DeWeese, I departed the location, as did all others present.  I traveled by car to 3324 Bixler Church Road.  The U.S. Marshals approached the property first in their vehicles, and the Company's agents waited behind in their vehicles.

12.    I wore a body camera to record any interactions that occurred at the property.  Upon arriving at the property, I turned my body camera on to record.  Attached hereto as **Exhibits A and B** are true and correct copies of the two videos I recorded while at the property.

13.    As documented in **Exhibit A**, when we arrived to the property, the entrance to the property was blocked with a large tractor.  An individual who I understood to be Matthew Dell was present at the entrance to the property on an all-terrain vehicle.  After he saw the blue lights from the U.S. Marshals' vehicle, Mr. Dell drove away.

14.    Ms. Kable then walked down to the entrance of the property, refused to move the tractor, and walked back into the property.

15.    I understand that the U.S. Marshals then called the Sheriff's Office for assistance.

16.    As also documented in **Exhibit A**, Sheriff DeWeese and other members of the Sheriff's Office arrived approximately ten minutes thereafter.

17.    As documented in **Exhibit B**, once all personnel—the Sheriff, the U.S. Marshals, and the Company's agents—were gathered at the entrance to the property, Ms. Kable rode down on horseback, screaming profanities and attempting to deny entry.

18.    As also documented in **Exhibit B**, only after an extended conversation with Sheriff DeWeese did Ms. Kable move the tractor to permit entry to her property.

19.    Despite Ms. Kable's attempts at obstruction, we were able to complete the survey work on Ms. Kable's property due to the assistance of the U.S. Marshals, who were able to facilitate the cooperation of the County Sheriff's Office.

20.    Given Ms. Kable's aggressive conduct and threats, I do not believe that our team can safely return to the property, or any property affiliated with the Dell-Kable family, without the support of the U.S. Marshals.

I solemnly affirm under the penalties of perjury and upon personal knowledge that the foregoing is true and correct.

Dates:     4/10/2026           

                                            Ryan Kivitz