## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

PSEG RENEWABLE TRANSMISSION LLC,

  *Petitioner*,

  v.

ANDREA KABLE,

  *Respondent.*

Case No. 25-cv-3501-ABA

### MEMORANDUM OPINION AND ORDER

This case arises out of attempts by Petitioner PSEG Renewable Transmission LLC ("PSEG") to effectuate preliminary injunctions granted by this Court in two other cases (*PSEG Renewable Transmission LLC v. Arentz Family, LP*, Case No. 25-cv-1235 ("*PSEG I*") and *PSEG Renewable Transmission LLC v. Alvi Properties, LLC*, Case No. 25-cv-2296 ("*PSEG II*")). Respondent Andrea Kable is not a respondent in *PSEG I* or *PSEG II*; however, she resides on a property that is subject to the preliminary injunction in *PSEG I*. Despite her alleged awareness of the preliminary injunctions in *PSEG I* and *PSEG II* granting PSEG access to private properties for purposes of conducting surveys related to the Maryland Piedmont Reliability Project, PSEG alleges that Ms. Kable on multiple occasions attempted to obstruct their access to properties subject to the preliminary injunctions. Ms. Kable has not participated in this litigation whatsoever.

Even after the Court granted the motion for preliminary injunction as unopposed and granted the motion for default judgment, thus specifically barring Ms. Kable from interfering or obstructing PSEG's surveys, Ms. Kable continued these actions as was shown by body camera footage filed with this Court. PSEG then filed a motion for assistance from the United States Marshals Service to complete the surveys on the

1

property that Ms. Kable occupied, which the Court granted, as well as a motion for sanctions and to hold Ms. Kable in contempt. Ms. Kable failed to respond to the motion and failed to appear for the hearing on that motion. For the reasons stated below, the motion for sanctions will be granted in part and denied in part.

## I.   BACKGROUND

On June 20, 2025 (amended July 11, 2025 and clarified December 19, 2025) and on September 5, 2025, this Court issued preliminary injunctions ("PIs") in *PSEG I* and *PSEG II*. *PSEG I*, ECF No. 256, *as amended*, ECF No. 268, *clarified*, ECF No. 329; *PSEG II*, ECF No. 160, *clarified*, ECF No. 203. Through those PIs, the Court ordered that "PSEG shall be permitted to enter onto the properties of Respondents and to remain on the property to the extent reasonably necessary to make surveys, run lines or levels, or obtain information relating to the acquisition and future use of the properties in connection with the Maryland Piedmont Reliability Project." *PSEG I*, ECF No. 268 ¶ 1; *PSEG II*, ECF No. 160 ¶ 1. The PIs also required that PSEG give Respondents notice of when it would be entering a given property "by taping a notice on the front door of the Respondent['s]" home. *Id*. ¶ 2. Ms. Kable is not a respondent in *PSEG I* or *PSEG II*, but PSEG alleges that she resides on a property owned by Matthew Lee Dell, who is a respondent in *PSEG I* (and who is represented by counsel, but also has not responded to the present motions, including the motion for Marshals assistance filed in *PSEG I* (*PSEG I*, ECF No. 346)). ECF No. 1 ¶ 19. PSEG alleges that, based on comments Ms. Kable made on a local news station, it appears that Ms. Kable has been aware of these preliminary injunctions. *Id*. ¶ 20.

PSEG alleges that, notwithstanding her awareness of these Court Orders, on August 21, 2025, Ms. Kable approached a PSEG agent who had traveled to Mr. Dell's

property for the purpose of posting a notice of entry and began yelling words including, "Move that fucking truck now," "Get the fuck off my property," and "Fucking leave now." *Id.* ¶ 22–24. PSEG further alleges that on September 9, 2025, agents were parked on the side of a public road when Ms. Kable approached them in a white pickup truck at a high rate of speed, stopped approximately 50 feet away from the agents' vehicles, exited her vehicle, and began yelling aggressively at them. *Id.* ¶¶ 27–28. PSEG contends that the agents entered their vehicle and began to drive away in an attempt to deescalate the situation, but that Ms. Kable began tailing that vehicle for about three quarters of a mile. *Id.* ¶¶ 29–30. Later that same day, PSEG alleges that, as PSEG agents were attempting to leave a property where they had been working, Ms. Kable pulled her truck into the driveway blocking their exit. *Id.* ¶ 32. After some back and forth, Ms. Kable backed her truck out of the driveway and parked in a different driveway on the same road. *Id.* ¶¶ 33–34. PSEG contends that, as the agents drove away, they saw her standing next to her truck swinging a baseball bat and shouting aggressively. *Id.* ¶ 34. PSEG alleges that another incident occurred on September 23, 2025. *Id.* ¶¶ 36–43.

On September 16, 2025, Ms. Kable was arrested for second degree assault of two Carroll County Government employees, destruction of property of a Carroll County Government vehicle, and disturbing the peace. *Id.* ¶ 44; ECF No. 1-12 at 2, 5. The Statement of Probable Cause by the arresting officer states that the Carroll County Government employees were at the property "conducting Habitat and Resources studies with written permission from the owner" and that "Kable advised that she believed the victims were Power Line employees who did not have permission to be on the property." ECF No. 1-12 at 5. Ms. Kable has also since been charged in what appears to be an unrelated misdemeanor criminal case and qualified for public defender assistance

3

(providing indication on Ms. Kable's financial means, which becomes relevant here for the reasons explained below). ECF No. 21-1, Declaration of Counsel Kurt Fischer, ¶ 10.

On October 24, 2025, PSEG filed the above-captioned case as well as a motion for a preliminary injunction seeking to hold Ms. Kable in civil contempt, enjoin her from further obstruction, and order her to pay some of PSEG's attorneys' fees. ECF No. 1; ECF No. 5. Ms. Kable was served on November 13, 2025. ECF No. 14. On December 16, 2025, as Ms. Kable had not filed any response prior to the deadline, the Clerk entered default and sent Ms. Kable notice of default granting her thirty days to file a motion to vacate. ECF Nos. 17 & 18. As Ms. Kable had not responded to the motion for preliminary injunction and for the same reasons the Court had granted the preliminary injunctions in *PSEG I* and *PSEG II*, the Court granted the motion for preliminary injunction on December 19, 2025 but did not grant the request for attorneys' fees. ECF Nos. 19 & 20. As Ms. Kable failed to file any motion to vacate default, PSEG filed a motion for default judgment on January 30, 2026, seeking to hold Ms. Kable in civil contempt, enjoin her from further obstruction, and order her to pay attorneys' fees. ECF No. 21. On February 24, 2026, the Court granted the motion insofar as it further enjoined Ms. Kable from obstructing PSEG's survey efforts but continued to hold in abeyance the request for attorneys' fees and costs. ECF No. 22.

On March 26, 2026, PSEG filed a motion for U.S. Marshals assistance in completing the surveys on the property where Ms. Kable resides as well as a motion for sanctions and to hold Ms. Kable in contempt. ECF Nos. 23 & 25. Along with these motions, PSEG filed body camera footage from one of its security agents. These motions explain, as is supported by the body camera footage, that on March 25, 2026 (after the Court had issued its PI and default judgment orders in this case), PSEG agents

4

attempted to provide notice for a survey on the property where Ms. Kable resides. ECF No. 23 at 3. Shortly after the team exited their vehicles and began walking towards the front door, Ms. Kable began repeatedly screaming profanities at the agents and threatened to release her dogs on them. *Id.* Because of Ms. Kable's behavior, the agents were unable to post the notice on the front door as is required by this Court in order for them to conduct the surveys. *Id.* at 3–4. On March 31, 2026, this Court granted the motion for U.S. Marshals assistance (ECF No. 23). ECF No. 29.

On April 10, 2026, PSEG filed a status report, supported by body camera footage, indicating that, on March 31 after receiving the Court order granting Marshals assistance, because PSEG agents were already with the Deputy U.S. Marshals who were there to assist with another property, they decided to immediately travel to the property where Ms. Kable resided. ECF No. 30 ¶¶ 5–6, 8. Upon arrival to the property, PSEG agents observed a large tractor blocking the only paved path onto the property so the Marshals called the Carroll County Sheriff's office to assist. *Id.* ¶ 8. Shortly after the Sheriff and other members of the Sheriff's office arrived, Ms. Kable came down to the driveway screaming profanities at PSEG agents, the Marshals, and the sheriffs. *Id.* ¶ 9. After a conversation with the Sheriff, Ms. Kable agreed to move the tractor and allow the agents onto the property. *Id.* ¶¶ 10–11. During the surveys, Ms. Kable yelled profanities at or about the agents in front of the Marshals and Sheriff's agents, but the PSEG agents were able to complete the work that they needed on her property. *Id.* ¶¶ 12–13. From the body camera footage, it appeared that, during the surveys, Ms. Kable spoke by radio to others who were working on the farm and was entirely calm for those conversations. At one point, Ms. Kable calmly asked the PSEG agents to stop moving for a moment so that someone could settle one of the horses to which the agents obliged and she thanked

5

them. Ms. Kable later posted on TikTok profanities about the PSEG agents and counsel, including in the caption "they're not coming back EVER. HEY BITCH PSEG Lawyer-fuck around and try me again.[ I] will ask every land owner to stand with me and you will LOSE. YOU WILL HAVE TO KILL ME." *Id.* ¶ 14.

On April 22, 2026, this Court set an in-person hearing for May 12, 2026 on the motion for sanctions and "warn[ed] Respondent Andrea Kable that failure to appear for this hearing may result in the issuance of the sanctions requested by Petitioner PSEG." ECF No. 33. Ms. Kable did not appear for the May 12, 2026 hearing.

## II.    DISCUSSION

"When a litigant violates an order, the court generally may exercise its authority to hold the violator in civil contempt." *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020) (citing *Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 617 (4th Cir. 2018)). "And sometimes an award of damages is necessary to 'incentivize' compliance." *Id.* (quoting *Rainbow Sch.*, 997 F.3d at 617). A party who "moves for a civil contempt order must first prove each of these elements by clear and convincing evidence: (1) the existence of a valid court order; (2) the order was in the moving party's 'favor'; (3) a knowing violation of the terms of the order; and (4) the moving party suffered harm from the violation." *Id.* (citing *United v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017)).

"Once the movant establishes these elements, the burden shifts to the defendant to show 'good faith [in making] all reasonable efforts to comply with the enforcement order.' A defendant who fails to meet this burden may be held in civil contempt." *Id.* at 461–62 (quoting *Ali*, 874 F.3d at 831). Sanctions for civil contempt may be imposed if a party fails to comply with a preliminary injunction or a default

judgment order. *See Enovative Techs., LLC v. Leor,* 86 F. Supp. 3d 445, 446 (D. Md. 2015) (citing *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995)) (finding defendant in civil contempt for violating preliminary injunction); *Cascade Cap., LLC v. DRS Processing LLC,* Case No. 3:17-cv-00470-RJC-DSC, 2018 WL 4705559, at *3 (W.D.N.C. Oct. 1, 2018) (finding defendant in civil contempt for violating valid default judgment order).

Ms. Kable has violated this Court's order on multiple occasions by obstructing PSEG's agents from conducting surveys on properties that this Court has already ordered that PSEG has the right to survey (within certain limitations including regarding notice). Ms. Kable was also explicitly warned by the Court that failure to appear for the hearing could result in the issuance of sanctions. Further, it is Ms. Kable's actions that gave rise to the above-captioned case and her continued actions that have caused PSEG to need to continue filing motions and body camera footage in response. Therefore, it is clear that much of PSEG's attorneys' fees and costs specifically related to this case against her are directly caused by Ms. Kable's actions and could have been avoided or at least mitigated by Ms. Kable either abiding by the PI in *PSEG I*, which the property upon which she resides was subject to, or abiding by the PI and Default Judgment Order issued in this case that applied directly to her. She did neither.

At the time of the Motion for Default Judgment, PSEG asserted that it had accrued $52,614.36 in attorneys' fees but, in light of Ms. Kable's potentially limited financial means, was requesting an award of $20,000 in fees. ECF No. 21-1, Decl. of Fischer, ¶ 11. By the time of the hearing, PSEG asserted that it has expended an additional $49,786 in attorneys' fees (totaling $102,400.36) and thus increased its

request to an award of $35,000 in attorneys' fees. ECF No. 36-1, Declaration of Kurt Fischer, ¶ 13. PSEG is also requesting a civil fine of $5,000. ECF No. 25-6.

In light of Ms. Kable's continued actions and failure to appear before this Court, it is clear that a sanction is appropriate. The Court also takes into account Ms. Kable's financial means (which the Court could have considered with more information had she filed anything in this case or appeared for the hearing). Although this Court does not have visibility into the information that led the Maryland court to determine that Ms. Kable qualifies for public defender assistance in her latest criminal case, this is a service not generally provided unless the individual has limited financial means. The Court will order Ms. Kable to pay $2,000 in attorneys' fees as a sanction for violating the Court's orders and failing to appear for the hearing.

Ms. Kable is reminded that, to the extent PSEG needs to conduct any additional surveys on the property where she resides or any neighboring properties in her area, the preliminary injunction and default judgment order enjoining her from obstructing those surveys, ECF Nos. 19, 20, 22, remains valid and must be followed.

## III. CONCLUSION AND ORDER

For the foregoing reasons, the Court hereby ORDERS as follows:

1.  PSEG's Motion for sanctions (ECF No. 25) is GRANTED IN PART and DENIED IN PART;

    a.  The motion is granted insofar as it requests Respondent Kable to pay attorneys' fees as a sanction;

    b.  The motion is otherwise denied;

2.  PSEG shall SERVE this Order on Ms. Kable;

3.      Respondent Kable is in civil contempt and SHALL PAY $2,000 to

Respondents in attorneys' fees directly to PSEG within 30 days after PSEG

serves this order on her.


Date:  July 10, 2026                                     _____/s/_____
                                                        Adam B. Abelson
                                                        United States District Judge